UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROCCO LAGIORGIA,

      Petitioner,

v.                                           CASE NO. 6:06-cv-924-Orl-19DAB

JAMES CROSBY, et al.,

      Respondents.

_____

## ORDER

Petitioner filed a petition for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1) alleging that he received ineffective assistance of counsel. Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 7). Petitioner filed a reply to the response (Doc. No. 12).

**I.**    *Procedural History*

Petitioner was charged by information with capital sexual battery (count one) and lewd act in the presence of a child (count two). After a jury trial he was found guilty as charged and was sentenced life in prison on count one and to 117.7 months of imprisonment on count two. Petitioner appealed his convictions and sentences. After conducting oral argument, the Florida Fifth District Court of Appeal affirmed the convictions and sentences. *LaGiorgia v. State*, 833 So. 2d 205 (Fla. 5th DCA 2002). Mandate was issued on January 2, 2003.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief, raising two grounds: ineffective assistance of counsel and newly discovered evidence. The state trial court denied the ineffective assistance of counsel ground as facially insufficient and conducted an evidentiary hearing as to the newly discovered evidence ground. The state trial court ultimately denied the newly discovered evidence claim, and the appellate court affirmed the denial. *LaGiorgia v. State*, 888 So. 2d 732 (Fla. 5th DCA 2004).

Petitioner then filed an amended Rule 3.850 motion, asserting various claims of ineffective assistance of counsel. The state trial court denied the motion, and the appellate court *per curiam* affirmed the denial. *LaGiorgia v. State*, 925 So. 2d 334 (Fla. 5th DCA 2006).

## II.   *Petitioner's Claims*

Petitioner contends that he received ineffective assistance of counsel because trial counsel (a) "took no steps whatsoever to exclude irrelevant and unduly prejudicial testimony relating to uncharged conduct, including, but not limited to, evidence relating to other arrests and crimes totally unrelated to the charged offense"; (b) failed to object when the prosecutor improperly elicited "profile testimony" from the alleged victims' babysitter; (c) failed to offer critical impeachment evidence of one of the alleged victims; and (d) failed to request a limiting instruction when the collateral acts were admitted. Petitioner raised these four claims in his amended Rule 3.850 motion. The trial court denied relief, and the state appellate court *per curiam* affirmed.

2

*A.     The Standard*

Habeas relief may not be granted with respect to a claim adjudicated on the merits

in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions;

the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432

F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006).  The meaning of the clauses

was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835

(11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by [the United States
> Supreme Court] on a question of law or if the state court decides a case
> differently than [the United States Supreme Court] has on a set of materially
> indistinguishable facts.  Under the 'unreasonable application' clause, a federal
> habeas court may grant the writ if the state court identifies the correct
> governing legal principle from [the United States Supreme Court's] decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

Petitioner's four claims all involve allegations of ineffective assistance of counsel. The state trial court utilized the clearly established law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88.  *See* App. F at 156.  Therefore, the clearly established federal law component has been satisfied.

**B.**     *Claim (a)*

Petitioner first argues that his trial counsel "took no steps to exclude irrelevant and unduly prejudicial testimony relating to uncharged conduct, including, but not limited to, evidence relating to other arrests and crimes totally unrelated to the charged offenses."

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

(Doc. No. 1 at 7-8.)  According to Petitioner, he was charged with two distinct acts involving his daughters: one charge of capital sexual battery for penetrating his daughter Elena's mouth with his penis and one count of lewd and lascivious conduct in the presence of his daughters (Gloria and Elena) and "in furtherance thereof [Petitioner] did with his penis penetrate or have union with the mouth."  (Doc. No. 1 at 11.)  Petitioner contends that the State presented a litany of evidence at trial that went beyond the allegations set forth in the information.  Specifically, he complains that his trial counsel did not object to evidence that he repeatedly walked around naked in front of his daughters; that he masturbated on more than one occasion in their presence; that he watched sexually explicit movies daily and forced his daughters to watch with him; that he was naked or would masturbate while watching the movies; that he would take off Elena's clothing and touch her private parts and "bottom"; that he forced Elena to perform oral sex on him on more than one occasion; that he would threaten to hit Elena with a belt, was mean to her, and would often force her to wear make-up at the age of four; that he ejaculated over his wife while one of his daughters was lying in bed with them; that he was previously arrested on a domestic violence charge; and that "new charges" against him surfaced after his arrest for the charged offense.  (Doc. No. 1 at 11-12.)  According to Petitioner, the State presented no physical evidence or eyewitness testimony, and the case amounted to a credibility contest between his two daughters and himself.  Thus, he argues, the admission of the irrelevant and inflammatory evidence caused him great prejudice.

5

Petitioner raised this claim in his amended Rule 3.850 motion, and the state trial court rejected it, as follows:

> The specific items of evidence regarding Defendant's sexual behavior with the two victims did not constitute "similar fact"/*Williams* rule evidence, for which advance notice was required. On the contrary, these were relevant items of evidence which were admissible under § 90.202 [sic], Florida Statutes, because they occurred during the same time period as the sexual battery charged in count one and the lewd act charged in count two, and were inextricably intertwined with those charges. In other words, this testimony placed the crimes in context. Counsel had no legal basis to object to this evidence, and there is no reasonable probability that the outcome of the trial would have been different if he had done so.

> As for Gail Pramer's testimony that Defendant was previously arrested for domestic violence and Sara LaGiorgia's testimony that Defendant ejaculated over her while one of the children was in the bed, the record indicates that the State did not intentionally elicit this information. Both witnesses volunteered the information in non-responsive answers to permissible questions. However, neither answer constituted reversible error and, while an objection would have been sustained, there is no reasonable probability that a mistrial would have been granted or that the outcome of the trial would have been different in any respect if counsel had objected.

> As for Detective Bowcock's testimony that new charges had surfaced since Defendant's arrest, this claim lacks merit. He mentioned only "new allegations" that warranted an additional interview, and after reading his testimony in context, the Court finds there is no reasonable probability that his testimony would have been [mis]interpreted. Again, counsel had no basis to object, and there is no reasonable probability that the outcome of the trial would have been different if he had done so.

(App. F at 157-58.) The state appellate court *per curiam* affirmed the trial court's decision.

Petitioner has not demonstrated that the state court's determination regarding this claim was contrary to or an unreasonable application of *Strickland*. As set forth by the state trial court, the sexual behavior evidence about which Petitioner complains did not qualify

as similar fact evidence.  Instead, the evidence was admissible as relevant evidence under

§ 90.402, Fla. Stat. (2001).[2]  Since the trial court deemed the evidence to be relevant to the

charges, it was admissible, and counsel's performance was neither unreasonable nor

prejudicial.  As for the remaining evidence to which Petitioner contends counsel should

have objected, this Court agrees with the state court's determination that Petitioner has not

demonstrated prejudice.

**C.     Claim (b)**

Petitioner contends that defense counsel failed to object when the State elicited

"profile testimony" from the alleged victims' babysitter.  (Doc. No. 1 at 8.)  According to

Petitioner, the babysitter testified that she was trained to recognize certain behaviors in

children.  She then testified that the two victims in this case exhibited many of the behaviors

associated with molested children.  During closing arguments, the prosecutor argued that

the babysitter had training in recognizing such behaviors in children as though she were an

expert in child abuse.  According to Petitioner, the evidence showing that an alleged victim

fits the "profile" of an abused child is inadmissible in Florida and improperly bolstered the

victims' testimony.  *Id*.

Petitioner raised this claim in his amended Rule 3.850 motion, which the state trial

court rejected:

> The State did not qualify Ms. Pramer as an expert, nor did it attempt
> to elicit her testimony on the symptoms of abused children.  Her testimony

---

[2]Florida Statutes section 90.402 provides: "All relevant evidence is admissible, except as provided by law."

7

was permissible, because it was relevant and necessary to explain why she noticed the changes in the children's behavior and questioned Defendant about those changes, questions which he dismissed.  It was also relevant to establish that the children did not make up their stories, nor were the stories invented and "force fed" to them.  Counsel had no legal basis to object to this testimony, and there is no reasonable probability that the outcome of the trial would have been different if he had done so.

(App. F at 159.)  The state trial court's decision was *per curiam* affirmed on appeal.

Prior to 1997, the Supreme Court of Florida permitted an expert to provide testimony comparing a child sexual abuse victim's story with patterns of consistency in the stories of other child sexual abuse victims.  *See Tingle v. State*, 536 So. 2d 202, 205 (Fla. 1988) ("[A]n expert may properly aid a jury . . . 'by discussing various patterns of consistency in the stories of child sexual abuse victims and comparing those patterns with patterns in [the victim's] story.'  We recognize that expert testimony such as this, by its very nature, to some degree will tend to either bolster or refute the credibility of the child victim; however, the ultimate conclusion as to the victim's credibility always will rest with the jury.") (quoting *United States v. Azure*, 801 F.2d 336, 340 (8th Cir. 1986)); *Glendening v. State*, 536 So. 2d 212 (Fla. 1988) (a medical expert witness may testify as to whether, in the expert's opinion, the behavior of a child is consistent with the behavior of a child who has been sexually abused).  However, on February 6, 1997, the Supreme Court of Florida determined that "expert testimony offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused should not be admitted."  *Hadden v. State*, 690 So. 2d 573, 577 (Fla. 1997).

The *Hadden* Court further explained that child abuse accommodation syndrome evidence is usually presented by a psychologist who testifies "on the basis of studies that children who have been sexually abused develop certain symptoms. . . . The psychologist then links the type of syndrome symptoms to the child who is the victim in the case being tried." *Id.* at 575.   However, the *Hadden* Court did not close the door on all expert testimony in these cases.   Pure opinion testimony based solely on the expert's training and clinical experience, rather than relying on conclusions garnered from studies and tests, could still be admitted.   But, the Court warned that "syndrome evidence is not made admissible by combining such evidence with pure opinion testimony because such a combination is not pure opinion evidence based solely upon the expert's clinical experience." *Id.* at 579-80.

In the instant case, the victims' babysitter did not testify as an expert.   She testified as to her personal experiences and observations concerning the victims.   Because the babysitter was not presented as an expert and testified as to her personal experiences and observations, her testimony did not fun afoul of *Hadden*.   Given that the state court's resolution of this claim was neither contrary to, nor an unreasonable application of, *Strickland* and Petitioner has not impugned that court's factual findings, § 2254(d) precludes this Court from granting relief on claim (b).

**D.     *Claim (c)***

Petitioner contends that counsel failed to offer critical impeachment evidence of his daughter Gloria from her pre-trial deposition.   According to Petitioner, Gloria testified at trial that she witnessed her sister Elena perform oral sex on Petitioner.   (Doc. No. 1 at 14.)

9

However, before the trial, Petitioner's former attorney deposed Gloria in connection with a petition to terminate parental rights. During the course of that deposition, Gloria twice indicated that she did not ever see Petitioner touch Elena inappropriately. *Id*. at 14-15. Petitioner further states that the deposition was transcribed nine months before his trial and that defense counsel had a copy of the transcript.

In rejecting the same claim in Petitioner's amended Rule 3.850 motion, the state trial court found as follows:

> Impeachment on this point would have opened the door to redirect testimony that during the same deposition, Gloria also stated that she was initially afraid to disclose everything because she was afraid to do so, and that she went on to state that she saw it happen when Defendant told her to come and suck his private part. Furthermore, Gloria was a child who would not be expected to relate events in exactly the same manner each time. The record indicates that counsel did impeach Elena on two occasions with her differing versions of the events in question, but the jury still convicted Defendant. Finally, the children's testimony belied the defense claim that Ms. Pramer coached the children as they asserted that she had told them to be honest and tell the truth. There is no reasonable probability that the defense theory would have been bolstered or the outcome of the trial would have been different if counsel had impeached Gloria on a partial inconsistency.

(App. F at 160.) The appellate court *per curiam* affirmed the trial court's decision.

At the outset, it appears that the state trial court referenced the wrong deposition when it resolved this claim. On January 19, 2000, Gloria gave a deposition in connection with the civil proceeding regarding termination of parental rights. It is testimony in connection with such proceeding that Petitioner contends counsel failed to use to impeach Gloria at trial.

10

Gloria also gave a video deposition on February 2, 2001, in connection with Petitioner's criminal proceedings.  It was the 2001 video deposition upon which the trial court relied in resolving the Rule 3.850 motion.

However, a review of the appropriate deposition reveals that the ultimate conclusion is not altered.  In the 2000 deposition, Gloria testified that Petitioner "would come up to Elena at night and sleep by her and he would really treat her bad, like he would get next to her.  And he – he – he didn't have any clothes on when he did this, but . . ." (Doc. No. 12-2 at 10.)  When pressed, Gloria admitted that she had never seen Petitioner "do that to Elena." *Id.*  In addition, Gloria answered "No" when asked if she ever saw Petitioner touch Elena in a way that she did not think was nice.  *Id.* at 11-12.

At trial, Gloria testified that she heard her father, Petitioner, tell her sister, Elena, that his private part was a "Tootsie roll."  (App. B at 131-32.)  He then directed Elena to "suck his Tootsie roll."  *Id.* at 132.  Gloria saw Elena kneel down and do what Petitioner told her to do.  *Id.* at 133-34.

Gloria's deposition testimony is not necessarily inconsistent with her trial testimony.  At the deposition, she indicated that she had not seen Petitioner touch Elena, but her trial testimony concerned an act Elena performed on Petitioner, albeit at Petitioner's direction.  Even if considered inconsistent, the impeachment value of such inconsistency was very low and explained by the fact that Gloria was a small child who may not have comprehended the reach of the question posed at the deposition.  This Court cannot conclude that trial

counsel's failure to use the civil deposition as impeachment was unreasonable or that such failure in any manner prejudiced Petitioner.  This claim must fail.

**E.      *Claim (d)***

Petitioner also argues that counsel failed to request a limiting instruction when the collateral acts listed in connection with claim (a) were admitted into evidence.  He raised this claim in his amended Rule 3.850 motion, and the trial court summarily denied it.  The denial was *per curiam* affirmed on appeal.

As discussed in connection with claim (a), the evidence challenged by Petitioner was not similar fact or *Williams* rule evidence.  Therefore, he was not entitled to a limiting instruction regarding the purpose of the evidence.  Petitioner simply has not demonstrated either deficient performance or prejudice regarding this matter.

**F.      *Conclusion***

As to claims (a), (b), and (d), the Court finds that Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law.  Moreover, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented.  Thus, claims (a), (b), and (d) must be denied pursuant to § 2254(d).

Because the trial court utilized the incorrect deposition in resolving claim (c), this Court determines that it made a unreasonable determination of the facts.  However, a consideration of the appropriate deposition still leads to the conclusion that counsel was not

12

ineffective regarding the potential impeachment of Gloria.  Therefore, claim (c) is subject to dismissal on the merits.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.      This case is **DISMISSED WITH PREJUDICE**.

2.      **The Clerk of the Court shall enter judgment accordingly and is directed to close this case**.

**DONE AND ORDERED** at Orlando, Florida, this _4th____ day of March, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies to:
sa 3/4
Rocco Lagiorgia
Counsel of Record

13